The Union Improvement Company *v.* George B. Markle,
John Markle, Alvan Markle, Clora Markle and Ida
Markle (children of George B. Markle, deceased), Wil-
liam Lilly and Elisha P. Wilbur, trading as G. B.
Markle & Co., Appellants.

*Contract—Interest—Mining lease.*

Where the lessee, under a mining lease, is to construct a tunnel to drain
the mine, the tunnel to be the property of the lessor during the continuance
of the lease, then to become the joint property of the lessor and lessee,
and the lessor is to pay a specified sum, with interest, if the tunnel should
be opened successfully, the lessee to pay the entire cost of the construc-
tion as the work advances, interest on the amount payable by the lessor
upon the successful completion of the tunnel should be ascertained, in the
absence of any provision in the contract upon the subject, by equating
the date of all the expenditures on account of construction, and allowing
interest from that date.

Argued March 27, 1898.   Appeal, No. 422, Jan. T., 1898, by
defendants, from judgment of C. P. No. 4, Phila. Co., Sept. T.,
1898, No. 597, on case stated.   Before GREEN, McCOLLUM,
MITCHELL, DEAN and FELL, JJ.   Affirmed.

Case stated to determine what was due under a mining con-
tract and lease.

Paragraphs six, eight, nine, eleven and twelve of the case
stated are as follows:

6. The interest on that $133,333.34 from the several dates of
the expenditure of the items thereof to October 14, 1898, is
$56,532.06.

8. The interest on the items in that $133,333.34 from the
several dates of the expenditure thereof to October 14, 1898, is
$31,174.88.

9. The interest on $133,333.34 from the date of the comple-
tion of the tunnel for the drainage of the mines to October 14,
1898, is $23,644.45.

11. The interest on that proportion of each expenditure for
the tunnel from the respective date upon which it was made,
which the sum of $133,333.34 bears to the whole cost of the
tunnel is $42,756.60.

12. The interest on the various deductions from royalties from
the respective dates of such deductions to October 14, 1898, is
$12,445.05.

The other facts appear by the opinion of ARNOLD, P. J., which was as follows:

The plaintiff, being the owner of the Ebervale coal mines, which were full of water, leased them to the defendants on November 19, 1889, reserving royalties, the duty to mine coal (and consequently, to pay royalties) not to begin until the mines should be so far cleared of water as to be workable.    In order to drain the mines the defendants agreed to construct a tunnel, which should be the property of the defendants during the continuance of the lease, and on the expiration thereof become the joint property of the parties to the agreement, in the proportion of two thirds to the defendants and one third to the plaintiff.    All sums received from other parties for the use of the tunnel, after deducting expenses of keeping it in repair, are to be divided annually between the plaintiff and defendants in the same proportions, that is, one third to the plaintiff and two thirds to the defendants.

It was further agreed that in consideration thereof (that is, the construction of the tunnel) the plaintiff would allow the defendants to make monthly deductions from the royalties on coal from the Ebervale lands until the total amount of deductions should reach the sum of $133,333.34, interest being allowed the defendants on their expenditures up to that amount, and charged them on the monthly repayments until the deductions should cease.    It was declared to be the intention of the parties that the plaintiff should contribute only $133,333.34, with interest, no matter what the actual cost should be.    The construction of the tunnel was commenced on December 31, 1889, and it was completed on October 31, 1895, at a total cost of $423,815.35.    Deductions of royalties in payment of the contribution of the plaintiff toward the building of the tunnel commenced on November 14, 1895, and continued until October 14, 1898, the total amount deducted being $151,388.30.    As the date from which interest should be computed on the expenditures was not fixed by the agreement, the parties have, by the case stated, submitted the question to us to determine.

The plaintiff contends that it did not become liable for interest until the completion of the tunnel, to wit: October 31, 1895, and alleges that it has overpaid defendants $5,710.15, for which it asks judgment.

The defendants contend that the plaintiff should be charged with all the interest on the first items of expenditure up to $133,333.34, which were incurred between December 31, 1889, and November 14, 1892, and that so charging it, the plaintiff owes the defendants $27,177.46.

The respective calculations are these:

### PLAINTIFF'S CLAIM.

| | | |
|---|---:|---:|
| The plaintiff asks credit for royalties deducted | $150,242 89 | |
| And interest on the items of deduction from the time when made to October 14, 1898 (see paragraph twelve of case stated) . . . | 12,445 05 | |
| | | $162,687 94 |
| The plaintiff admits its obligation to contribute the sum of . . . . . . . | $133,333 34 | |
| And interest from October 31, 1895, to October 14, 1898 (paragraph nine of case stated) | 23,644 45 | |
| | | $156,977 79 |
| Difference claimed by plaintiff as stated in clause *a* of case stated . . . . . . . . . . | | $5,710 15 |

### DEFENDANTS' CLAIM.

| | | |
|---|---:|---:|
| The defendants claim from plaintiff its contribution of . . . . . . . | $133,333 34 | |
| And interest from dates of expenditure of the first items amounting to that sum (paragraph six of case stated) . . . . | 56,532 06 | |
| | | $189,865 40 |
| Deduct royalties . . . . . | $150,242 89 | |
| And interest as above . . . . | 12,445 05 | |
| | | $162,687 94 |
| Difference claimed by defendants, clause *b* of case stated | | $27,177 46 |

As above stated, the defendants contend that the plaintiff should be charged with the whole of the interest on the first items of expenditure, amounting to $133,333.34. To this the plaintiff answers that if the expenditures are not apportioned, then it should be charged with interest only on the last items of expenditures, amounting to $133,333.34, which were incurred between April 1, 1894, and October 31, 1895, in which case it would be entitled to $1,820.28 from the defendants.

By this calculation plaintiff allows its contribu-

| | | |
|---|---|---|
| tion . . . . . . . . . | $133,333 34 | |
| Interest from April 1, 1894, to October 31, 1895, | | |
| (see paragraph eight of case stated) . . | 31,174 88 | |
| | | $164,508 22 |
| Deduct royalties . . . . . . | $150,242 89 | |
| Interest as above . . . . . . | 12,445 05 | |
| | | $162,687 94 |
| Difference . . . . . . . . . . | | $1,820 28 |

There is another mode of calculation presented in the case stated which seems to us to be more equitable and more in accord with the intention of the parties as gathered from the lease and agreement of the parties. Before stating it we will give our reasons for adopting it. The paper executed by the parties on November 19, 1889, is a paper of dual character and purpose. It is a lease of the mines, with the covenants thereunto relating, and also an agreement to construct a tunnel, which tunnel should be the property of the defendants during the continuance of the lease, and after the expiration thereof the joint property of both parties, the defendants to own two thirds and the plaintiff one third. This division of ownership indicates that it was estimated that the tunnel would cost about $400,000, of which the plaintiff was to contribute only one third, $133,333.34, with interest, no matter what the actual cost should be. It did cost $423,815.35, or within six per cent of the estimate. As the ownership and cost of construction are in such close accord, it seems just and equitable that the interest on the cost of construction should be borne in the same proportion as the cost itself, and, therefore, adopting another calculation presented in paragraph *e* of the case stated, we make it:

| | | |
|---|---|---|
| Plaintiff's contribution to cost of tunnel . | $133,333 34 | |
| Interest on its proportion of each expenditure from the date when made (paragraph eleven of case stated) . . . . | 42,756 60 | |
| | | $176,089 94 |
| Deducting royalties . . | $150,242 89 | |
| And interest as above . . . . . | 12,445 05 | |
| | | $162,687 94 |
| Difference due to defendants . . . . . | | $ 13,402 00 |

In regard to the interest, while it is true that interest does not begin to run until default is made in the payment of the principal, yet this is always subject to the agreement of the parties. Here the plaintiff agreed to allow interest on the expenditures, the only matter not being fixed being the date from which the interest was to be calculated. In the absence of such date, as the interest was to be allowed on the expenditures, we think that it was meant that the interest should run from the date when those expenditures were made. As to the contributions of the plaintiff, there was not and could not have been any default, because the defendants were to pay themselves by deducting royalties when and as earned. If none were earned the plaintiff was not bound to contribute. As the tunnel was constructed and the royalties earned, we have a case for the application of the rule for the equation of payments and interest.

The contention of the defendants that the plaintiff should be charged with interest on the first $133,333.34 is not reasonable, nor is the counter contention of the plaintiff that it should be charged only on the last $133,333.34. The rule for the equation of interest according to the proportions of principal chargeable to each party for the construction of the tunnel seems to us to be the only sensible solution of the question. We therefore enter judgment in favor of the defendant for $13,402, with interest from October 14, 1898.

*Error assigned* was the judgment of the court.

*Richard C. Dale* and *John G. Johnson*, for appellants.

*Thomas Hart, Jr.*, for appellee.

OPINION BY MR. JUSTICE GREEN, May 8, 1899:

The only question between these parties is the determination of the time from which the interest on the amount which was to be contributed by the plaintiffs to the cost of the tunnel, should be computed. It is quite singular that so important an omission from the contract of the parties as this is, should happen in an instrument otherwise so carefully prepared. There is no dispute that interest is to be allowed to the defendants on the moneys expended by them, in the construction of the

tunnel, up to the amount of $133,333.34. The language of
the sixteenth article of the contract on this subject is: " Inter-
est being allowed them on their expenditure up to that amount
and charged them on the monthly payments when such deduc-
tion shall cease. It being the intention of this clause that the
party of the first part shall be liable to contribute only the said
sum of one hundred and thirty-three thousand three hundred
and thirty-three dollars and thirty-four cents, with interest, no
matter what the actual cost may be." The plaintiff contends
that interest should not commence to run until the tunnel was
completed, which was October 31, 1895. But it required six
years to construct the tunnel, and the defendants were con-
stantly expending their money from the commencement of the
work, which was the 31st day of December, 1889. As the plain-
tiff was to become the owner of a one-third interest in the tun-
nel from the expiration of the lease to the defendants, and as
they were to get the benefit of the increased royalties which
would result to them from the coal in the Ebervale mines if
the tunnel was successfully opened, it was entirely equitable
that they should share in the expense of its construction. But
they were not to pay anything toward the cost of construction
while it was being built, and in point of fact the defend-
ants paid the entire cost of construction which amounted to
$423,815.35. Now if the plaintiff was to be an owner, and
was to pay part of the cost of construction, and was to pay
also interest on a defined part of the cost, it is difficult to say
why the interest to be paid should not be computed while the
expenditures of the defendants were being made. We do not
discover any sufficient reason for holding either that the inter-
est should be paid on the first sum, $133,333.34, that was ex-
pended, or that it should be deferred until the last sum of that
amount was paid out. There is nothing of that kind in the
agreement, and as the parties were jointly interested in defray-
ing the actual cost of construction, it is far more conscionable,
and more reasonable, that interest should be allowed as the
expenditures were made. The proper mode of ascertaining the
time from which the interest payments should be computed in
such circumstances would be by equating the date of all the
expenditures on account of construction, and allowing interest
from that date. This was the method adopted by the learned
court below, and it meets with our entire approval.

The argument that interest could not commence to run until after the completion of the tunnel, because the lessor was to pay nothing unless the tunnel was opened successfully, is of no force. By the absolute terms of the contract the lessor was to contribute if the tunnel was successfully opened, and that is the contingency which has transpired. The obligation of the lessor to contribute is therefore just as complete as if there had been no alternative condition. As the lessor agreed to contribute to the actual expenditures in the event which has transpired, and to pay also interest on the expenditures, it is but reasonable that the interest payments should be computed as of the time the expenditures were being made. If any other time was intended it should have been expressed in the agreement. If the tunnel was not a success there could not be any interest due, because there would then be no principal due, and the contention that interest would not commence to run until after completion in the event of nonsuccess is fallacious, because in that event interest could never commence.

Judgment affirmed.